# Residential Lease

## CONDOMINIUM

BY THIS AGREEMENT ("Lease") made and entered into on AUGUST 28, 2004, between Zeina Afif, herein referred to as "Lessor", and Erica Gough (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), Michael Paul (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), Keith Hamilton (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), and Kristen Kruger (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), herein individually referred to as "Lessee" and collectively referred to as "Lessees". Lessor leases to Lessees the premises located at 1581 LEEDS CASTLE DRIVE, UNIT 102, VIENNA, VIRGINIA 22182, in the City of VIENNA, County of FAIRFAX, herein referred to as "Demised Premises", for a term of ONE (1) year, to commence on September 15, 2004, and to end on September 30, 2005, at 5:00 o'clock PM, herein referred to as "Term".

1. **Rent.** Lessees agrees to pay, without demand, to Lessor as Rent for the Demised Premises the sum of ONE THOUSAND NINE HUNDRED Dollars ($1,900.00) per month in advance on the FIRST (1st) day of each and every calendar month beginning October 1, 2004, at 1015 33RD STREET, N.W., WASHINGTON, DC 20007, City of WASHINGTON, DISTRICT of COLUMBIA, or at such other place as Lessor may designate. Lessees shall pay Lessor pro-rated Rent of NINE HUNDRED FIFTY Dollars ($950.00) for the period of September 15, 2004 to September 30, 2004.

2. **Form of Payment.** Lessees agree to pay Rent each month in the form of ONE (1) personal check, or ONE (1) cashier's check, or ONE (1) money order made out to Lessor.

3. **Late Payments.** For any Rent payment not received by Lessor by the TENTH (10th) of the month, Lessees shall pay a late fee in the amount of NINETY-FIVE Dollars ($95.00), due and payable by the TWENTIETH (20th) of the month.

4. **Returned Checks.** If, for any reason, a check used by Lessees to pay Lessor is returned without having been paid, Lessees will pay a charge of TWENTY-FIVE Dollars ($25.00) as additional rent AND take whatever other consequences there might be in making a late payment. After the second time a Lessee's check is returned, Lessees must thereafter secure a cashier's check or money order for payment of rent.

5. **Security Deposit.** On execution of this Lease, Lessees deposits with Lessor ONE THOUSAND NINE HUNDRED Dollars ($1,900.00), receipt of which is acknowledged by Lessor, as security for the faithful performance by Lessees of the terms hereof, to be returned to Lessees, without interest, except where required by law, on the full and faithful performance by Lessees of the provisions hereof.

6. **Quiet Enjoyment.** Lessor covenants that on paying the rent and performing the covenants herein contained, Lessees shall peacefully and quietly have, hold, and enjoy the Demised Premises for the agreed Term.

www.socrates.com

Lessees Initials EAG  MP  KAH     Lessor Initials ZA   KAK

Page 1 of 6

**DEFENDANT'S EXHIBIT 2**
ALL-STATE LEGAL SUPPLY CO.

LF310 • Rev. 05/04

**7. Use of Premises.** The Demised Premises shall be used and occupied by Lessees exclusively as a private single family residence, and neither the premises nor any part thereof shall be used at any time during the term of this Lease by Lessees for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private single family residence. Lessees shall comply with all the sanitary laws, ordinances, rules, and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the Demised Premises, and the sidewalks connected thereto, during the Term of this Lease.

**8. Number of Occupants.** Lessees agree that the Demised Premises shall be occupied by no more than FOUR (4) persons, consisting of FOUR (4) adults and ZERO (0) children under the age of EIGHTEEN (18) years.

**9. Condition of Premises.** Lessees stipulate that they have examined the Demised Premises, including the grounds and all buildings and improvements, and that they are, at the time of this Lease, in good order, repair, and a safe, clean, and tenantable condition. Lessor will provide Lessees a checklist reflecting the pre-lease condition of the Demised Premises to be signed by Lessees.

**10. Keys.** Lessees will be given ONE (1) SET of keys to the Demised Premises and ONE (1) mailbox key. If all keys are not returned to Lessor following termination of this Lease, Lessees shall be charged TEN Dollars ($10.00).

**11. Locks.** Lessees agree not to change locks on any door or mailbox without first obtaining Lessor's written permission. Having obtained written permission, Lessees agree to pay for changing the locks and to provide Lessor with one duplicate key per lock.

**12. Lockout.** If Lessees become locked out of the premises after Management Company's regular stated business hours, Lessees will be required to secure a private locksmith to regain entry at Lessees' sole expense.

**13. Parking.** Any parking that may be provided is strictly self-park and is at owner's risk. Parking fees are for a license to park only. No bailment or bailee custody is intended. Lessor is not responsible for, nor does Lessor assume any liability for damages caused by fire, theft, and casualty or any other cause whatsoever with respect to any car or its contents. Snow removal is the responsibility of the car owner. Lessor warrants that Lessees will have FOUR (4) parking passes, TWO (2) for residents and TWO (2) for guests.

**14. Assignment and Subletting.** Without the prior written consent of Lessor, Lessees shall not assign this Lease, or sublet or grant any concession or license to use the premises or any part thereof. Consent by Lessor to one assignment, subletting, concession, or license shall not be deemed to be consent to any subsequent assignment, subletting, concession, or license. An assignment, subletting, concession, or license without the prior written consent of Lessor, or an assignment or subletting by operation of law, shall be void and shall, at Lessor's option, terminate this Lease.

**15. Alterations and Improvements.** Lessees shall make no alterations to the buildings or



the Demised Premises or construct any building or make other improvements on the Demised Premises without the prior written consent of Lessor. All alterations, changes, and improvements built, constructed, or placed on the Demised Premises by Lessees, with the exception of fixtures removable without damage to the premises and movable personal property, shall, unless otherwise provided by written agreement between Lessor and Lessees, be the property of Lessor and remain on the Demised Premises at the expiration or sooner termination of this Lease.

**16. Damage to Premises.** If the Demised Premises, or any part thereof, shall be partially damaged by fire or other casualty not due to Lessees' negligence or willful act or that of their employees, family, agents, or visitors, the premises shall be promptly repaired by Lessor and there shall be an abatement of rent corresponding with the time during which, and the extent to which, the leased premises may have been untenantable; but, if the leased premises should be damaged other than by Lessees' negligence or willful act or that of their employees, family, agents, or visitors to the extent that Lessor shall decide not to rebuild or repair, the term of this Lease shall end and the rent shall be prorated up to the time of the damage.

**17. Dangerous Materials.** Lessees shall not keep or have on the leased premises any article or thing of a dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire on the leased premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

**18. Utilities.** Lessees shall be responsible for arranging for and paying for all utility services required on the Demised Premises.

**19. Right of Inspection.** Lessor and his agents shall have the right at all reasonable times during the term of this Lease and any renewal thereof to enter the Demised Premises for the purpose of inspecting the premises and all building and improvements thereon.

**20. Maintenance and Repair.** Lessees will, at their sole expense, keep and maintain the leased premises and appurtenances in good and sanitary condition and repair during the term of this Lease and any renewal thereof. In particular, Lessees shall keep the fixtures in the house or on or about the leased premises in good order and repair; keep the furnace clean; keep the electric bells in order; keep the walks free from dirt and debris; and, at their sole expense, shall make all required repairs to the plumbing, range, heating, apparatus, and electric and gas fixtures whenever damage thereto shall have resulted from Lessees' misuse, waste, or neglect or that of his employee, family, agent, or visitor. Major maintenance and repair of the leased premises, not due to Lessees' misuse, waste, or neglect or that of their employees, family, agents, or visitors, shall be the responsibility of Lessor or his assigns. Lessees agree that no signs shall be placed or painting done on or about the leased premises by Lessees or at their direction without the prior written consent of Lessor.

**21. Painting.** Lessor reserves the right to determine when the dwelling will be painted unless there is any law to the contrary.

22. **Insurance.** Lessor has obtained insurance to cover fire damage to the building itself and liability insurance to cover certain personal injuries occurring as a result of property defects or Lessor negligence. Lessor's insurance does not cover Lessees' possessions or Lessees' negligence. Lessees shall obtain Lessees' insurance policy to cover damage or loss of personal possessions, as well as losses resulting from their negligence and Lessees agree to add Lessor as a co-insured. Copy of such policy shall be furnished to Lessor within 30 days of the date of this Lease.

23. **Pets.** *This Lease allows the Lessees to have a total of ONLY ONE (1) pet at the leased premises. At the time of signing this lease, Lessees shall pay to Lessor, in trust, a deposit of THREE HUNDRED Dollars ($300.00), to be held and disbursed for pet damages to the Demised Premises (if any) as provided by law. This deposit is in addition to any other security deposit stated in this lease.*

24. **Display of Signs.** During the last THIRTY (30) days of this Lease, Lessor or her agent shall have the privilege of displaying the usual "For Sale" or "For Rent" or "Vacancy" signs on the premises and of showing the property to prospective purchasers or tenants.

25. **Rules and Regulations.** Lessor's existing rules and regulations as governed by WESTWOOD VILLAGE CONDOMINIUM HOMEOWNER'S ASSOCIATION, shall be signed by Lessees, attached to and incorporated into this Lease. Lessor may adopt other rules and regulations at a later time provided that they have a legitimate purpose, not modify Lessees' rights substantially and not become effective without notice of at least two (2) weeks.

26. **Subordination of Lease.** *This Lease and Lessees' leasehold interest hereunder are and shall be subject, subordinate, and inferior to any liens or encumbrances now or hereafter placed on the Demised Premises by Lessor, all advances made under any such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions of such liens or encumbrances.*

27. **Holdover by Lessees.** Should a Lessee or Lessees remain in possession of the Demised Premises with the consent of Lessor after the natural expiration of this Lease, a new month-to-month tenancy shall be created between Lessor and Lessee(s) which shall be subject to all the terms and conditions hereof but shall be terminated on THIRTY (30) days' written notice served by either Lessor or Lessee(s) on the other party.

28. **Notice of Intent to Vacate.** [This paragraph applies only when this Agreement is or has become a month-to-month Agreement.] Lessor shall advise Lessee(s) of any changes in terms of tenancy with advance notice of at least 30 days. Changes may include notices of termination, rent adjustments or other reasonable changes in the terms of this Agreement.

29. **Surrender of Premises.** At the expiration of the Term, Lessees shall quit and surrender the premises hereby demised in as good state and condition as they were at the commencement of this Lease, reasonable use and wear thereof and damages by the elements excepted.

30. **Default.** If any default is made in the payment of rent, or any part thereof, at the times

hereinbefore specified, or if any default is made in the performance of or compliance with any other term or condition hereof, this Lease, at the option of Lessor, shall terminate and be forfeited, and Lessor may re-enter the premises and remove all persons therefrom. Lessees shall be given written notice of any default or breach, and termination and forfeiture of this Lease shall not result if, within FIFTEEN (15) days of receipt of such notice, Lessees have corrected the default or breach or have taken action reasonably likely to effect such correction within a reasonable time.

**31. Abandonment.** If at any time during the term of this Lease, any Lessee abandons the Demised Premises or any part thereof, Lessor may, at his option, enter the Demised Premises by any means without being liable for any prosecution therefore, and without becoming liable to Lessees for damages or for any payment of any kind whatever, and may, at his discretion, as agent for Lessees, re-let the Demised Premises, or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such re-letting, and, at Lessor's option, hold Lessees liable for any difference between the rent that would have been payable under this Lease during the balance of the unexpired term, if this Lease had continued in force, and the net rent for such period realized by Lessor by means of such re-letting. If Lessor's right of re-entry is exercised following abandonment of the premises by Lessees, then Lessor may consider any personal property belonging to Lessees and left on the premises to also have been abandoned, in which case Lessor may dispose of all such personal property in any manner Lessor shall deem proper and is hereby relieved of all liability for doing so.

**32. Binding Effect.** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Lease.

**33. Radon Gas Disclosure.** As required by law, Lessor makes the following disclosure: "Radon Gas" is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in every state. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**34. Lead Paint Disclosure.** "Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention."

**35. Severability.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed and enforced as so limited.

www.socrates.com

Lessees Initials _GAG_ _MP_  Lessor Initials _ZA_ _KAH_ _KAK_