# RELIANCE STANDARD
## Life Insurance Company

Home Office: Chicago, Illinois • Administrative Office: Philadelphia, Pennsylvania

POLICYHOLDER: Sytex, Inc.

POLICY NUMBER: GL 134491

EFFECTIVE DATE: January 1, 2003, as amended through January 1, 2004

ANNIVERSARY DATES: January 1, 2004 and each January 1 thereafter.

PREMIUM DUE DATES: The first premium is due on the effective date. Further premiums are due monthly, in advance, on the first day of each month.

The Policy is delivered in Pennsylvania and is governed by its laws.

We agree to provide insurance to you in exchange for the payment of premium and a signed Application. The Policy provides benefits for loss of life from injury or sickness. It insures the eligible persons for the amount of insurance shown on the Schedule of Benefits. The insurance is subject to the terms and conditions of the Policy.

The effective date of the Policy is shown above. Insurance starts and ends at 12:01 A.M., Local Time, at your main address. It stays in effect as long as premium is paid when due. The "TERMINATION OF THE POLICY" section of the GENERAL PROVISIONS explains when the insurance can be ended.

The Policy is signed by the President and Secretary.

_Secretary_

_President_

Countersigned _____
Licensed Resident Agent

GROUP LIFE INSURANCE
NON-PARTICIPATING

This Group Life Policy amends the Group Life Policy previously issued to you by us. It is issued on May 20, 2004.

Effective Date: _1-1-04_
Provision Changed: _Added Class_

LRS-6422 Ed. 2/04

PLAINTIFF'S EXHIBIT
B



S Y T E X    J H C C L  1 3 4 4 9 1  0 0

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

GROUP POLICY NUMBER: GL 134491

POLICY EFFECTIVE DATE: January 1, 2003, as amended through January 1, 2004

POLICY DELIVERED IN: Pennsylvania

ANNIVERSARY DATE: January 1 in each year

Application is made to us by: Sytex, Inc.

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____

Policyholder: _____    Agent: _____

By: _____                _____
        (Signature)                                (Licensed Resident Agent)

_____
        (Title)

Please sign and return.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

LRS-6422-A Ed. 3/82

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

GROUP POLICY NUMBER: GL 134491

POLICY EFFECTIVE DATE: January 1, 2003, as amended through January 1, 2004

POLICY DELIVERED IN: Pennsylvania

ANNIVERSARY DATE: January 1 in each year

Application is made to us by: Sytex, Inc.

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____.

Policyholder: _____ Agent: _____

By: _____               _____
          (Signature)                                (Licensed Resident Agent)

_____
          (Title)

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

LRS-6422-A Ed 9/82

# TABLE OF CONTENTS

|  | Page |
|---|---|
| SCHEDULE OF BENEFITS | 1.0 |
| DEFINITIONS | 2.0 |
| GENERAL PROVISIONS | 3.0 |

Entire Contract
Changes
Incontestability
Records Maintained
Clerical Error
Misstatement of Age
Assignment
Conformity With State Laws
Certificate of Insurance
Policy Termination

| INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION | 4.0 |

General Group
Eligible Classes
Effective Date Of Individual Insurance
Termination Of Individual Insurance
Continuation Of Individual Insurance
Individual Reinstatement

| CONVERSION PRIVILEGE | 5.0 |
| PREMIUMS | 6.0 |

Premium Payment
Premium Rate
Grace Period

| BENEFICIARY AND FACILITY OF PAYMENT | 7.0 |
| SETTLEMENT OPTIONS | 8.0 |
| WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY | 9.0 |
| CLAIMS PROVISIONS | 10.0 |
| FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION | 11.0 |
| GROUP TERM LIFE INSURANCE IMMINENT DEATH BENEFIT RIDER | 12.0 |
| PORTABILITY | 13.0 |

LRS-6422-1 Ed. 9/82

## SCHEDULE OF BENEFITS

NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED: Information Network Systems, Inc., MacAulay-Brown, Inc.

"Affiliate" means any corporation, partnership, or sole proprietor under the common control of the Policyholder.

ELIGIBLE CLASSES: Each active, full-time and part-time employee, except any person employed on a temporary or seasonal basis, according to the following classifications:

    CLASS 1: full-time employee of Sytex, Inc. and Information Network Systems, Inc.

    CLASS 2: full-time and part-time regular employee of MacAulay-Brown, Inc.

INDIVIDUAL EFFECTIVE DATE: The first of the Policy month coinciding with or next following the day the person becomes eligible for Class 1. The first of the Policy month following the day the person becomes eligible for Class 2.

MINIMUM PARTICIPATION REQUIREMENTS: Percentage: 100%    Number of Insureds: 10

AMOUNT OF INSURANCE:

Basic Life:

    CLASS 1: One and one-half (1.5) times Earnings, rounded to the next higher $1,000, subject to a minimum of $50,000.00 and a maximum of $200,000.00.

    CLASS 2: One and one-half (1.5) times Earnings, rounded to the next higher $1,000, subject to a minimum of $50,000.00 and a maximum of $200,000.00.

The Amount of Basic Life Insurance will be: (1) reduced by 35% of the pre-age 65 amount at age 65; (2) further reduced by 25% of the pre-age 65 amount at age 70; and (3) further reduced by 20% of the pre-age 65 amount at age 75 and terminates at retirement.

The Life amount will be reduced by any benefit paid under the Imminent Death Benefit Rider.

CHANGES IN AMOUNT OF INSURANCE: Changes in the amount of insurance because of a change in age, class or earnings (if applicable) are effective on the date of the change, provided the Insured must be Actively At Work on the date of the change. If an Insured is not Actively At Work when the change should take effect, the change will take effect on the day after the Insured has been Actively At Work for one full day.

CONTRIBUTIONS: Person: Basic Insurance: 0%

## DEFINITIONS

"We," "us" and "our" means Reliance Standard Life Insurance Company.

"You", "your" and "yours" means the employer, union or other entity to which the Policy is issued and which is deemed the Policyholder.

"Eligible Person" means a person who meets the eligibility requirements of the Policy.

"Insured" means a person who meets the eligibility requirements of the Policy and is enrolled for this insurance.

"Actively at work" and "active work" means the person actually performing on a Full-time or Part-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.

"Full-time" means working for you for a minimum of 2080 hours annually.

"Part-time" means working for you for a minimum of 1560 hours annually.

"The date he/she retires" or "retirement" means the effective date of an Insured's:

    (1)   retirement pension benefits under any plan of a federal, state, county or municipal retirement system, if such pension benefits include any credit for employment with you;

    (2)   retirement pension benefits under any plan which you sponsor, or make or have made contributions; or

    (3)   retirement benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act.

"Earnings" as used in the SCHEDULE OF BENEFITS section, means the Insured's annual salary received from you on the day just before the date of loss, prior to any 401(k) plan or section 125 plan deductions. Earnings does not include commissions, overtime pay, bonuses or any other special compensation not received as basic salary.

If hourly employees are insured, the number of hours worked during a regular scheduled work week, not to exceed 40 hours per week, times 52 weeks, will be used to determine annual earnings.

"Total Disability" as used in the WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY section, means an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience.

## GENERAL PROVISIONS

### ENTIRE CONTRACT

The entire contract between you and us is the Policy, your application (a copy of which is attached at issue), and any endorsements and amendments.

### CHANGES

No agent has authority to change or waive any part of the Policy. To be valid, any change or waiver must be in writing. It must also be signed by one of our executive officers and attached to the Policy.

### INCONTESTABILITY

Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

Any statements made by you, any insured, or on behalf of any insured to persuade us to provide coverage, will be deemed a representation, not a warranty. This provision limits our use of these statements in contesting the amount of insurance for which an insured is covered. The following rules apply to each statement:

    (1)  No statement will be used in a contest unless:

        (a)  it is in a written form signed by the insured, or on behalf of the insured; and

        (b)  a copy of such written instrument is or has been furnished to the insured, the insured's beneficiary or legal representative.

    (2)  If the statement relates to an insured's insurability, it will not be used to contest the validity of insurance which has been in force, before the contest, for at least two years during the lifetime of the insured.

### RECORDS MAINTAINED

You must maintain records of all insureds. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly. We reserve the right to examine the insurance records maintained at the place where they are kept. This review will only take place during normal business hours.

### CLERICAL ERROR

Clerical errors in connection with the Policy or delays in keeping records for the Policy, whether by you, us, or the Plan Administrator:

    (1)  will not terminate insurance that would otherwise have been effective; and

    (2)  will not continue insurance that would otherwise have ceased or should not have been in effect.

If appropriate, a fair adjustment of premium will be made to correct a clerical error.

### MISSTATEMENT OF AGE

If an insured's age is misstated, the premium will be adjusted. If the insured's insurance is affected by the misstated age, it will also be adjusted. The insurance will be changed to the amount the insured is entitled to at his/her correct age.

### ASSIGNMENT

Ownership of any benefit provided under the Policy may be transferred by assignment. An irrevocable beneficiary must give written consent to assign this insurance. Written request for assignment must be made in duplicate at our Adminis-

LRS-6422-5 Ed. 4/94                      3.0

trative Offices. Once recorded by us, an assignment will take effect on the date it was signed. We are not liable for any action we take before the assignment is recorded.

## CONFORMITY WITH STATE LAWS

Any section of the Policy, which on its effective date, conflicts with the laws of the state in which the Policy is issued, is amended by this provision. The Policy is amended to meet the minimum requirements of those laws.

## CERTIFICATE OF INSURANCE

We will send to you an individual certificate for each Insured. The certificate will outline the insurance coverage and to whom benefits are payable.

## POLICY TERMINATION

You may cancel the Policy at any time. The Policy will be cancelled on the date we receive your letter or, if later, the date requested in your letter.

We may cancel the Policy if:

(1) the premium is not paid at the end of the grace period; or

(2) the number of Insureds is less than the Minimum Participation Number on the Schedule of Benefits; or

(3) the percentage of eligible persons insured is less than the Minimum Participation Percentage on the Schedule of Benefits.

If we cancel because of (1) above, the Policy will be cancelled at the end of the grace period. If we cancel because of (2) or (3) above, we will give you 31 days written notice prior to the date of cancellation.

You will still owe us any premium that is not paid up to the date the Policy is cancelled. We will return, pro-rata, any part of the premium paid beyond the date the Policy is cancelled.

LRS-6422-5 Ed. 4/94                     3.1

## INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION

**GENERAL GROUP:** The general group will be your employees and employees of any subsidiaries, divisions or affiliates named on the Schedule of Benefits.

**ELIGIBLE CLASSES:** The eligible classes will be those persons described on the Schedule of Benefits.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** If you pay the entire premium, the insurance for an eligible Person will go into effect on the date stated on the Schedule of Benefits. If an eligible Person pays a part of the premium, he/she must apply in writing for the insurance to go into effect. He/she will become insured on the date stated on the Schedule of Benefits, except that the insurance will go into effect:

    (1)   on the date he/she applies, if he/she applies within 31 days of the date he/she is first eligible; or

    (2)   on the date we approve any required proof of good health. We require proof of good health if a person applies:

        (a)   after 31 days from the date he/she first becomes eligible; or

        (b)   after he/she terminated this insurance but he/she remained in a class eligible for this insurance.

Changes in an insured's amount of insurance are effective as shown on the Schedule of Benefits.

If the person is not actively at work on the day his/her insurance is to go into effect, the insurance will go into effect on the day he/she returns to active work for one full day.

**TERMINATION OF INDIVIDUAL INSURANCE:** The insurance of an insured will terminate on the first of the Policy month coinciding with or next following:

    (1)   the date the Policy terminates; or

    (2)   the date the insured ceases to be in a class eligible for this insurance; or

    (3)   the end of the period for which premium has been paid for the insured; or

    (4)   the date the insured enters military service (not including Reserve or National Guard).

**CONTINUATION OF INDIVIDUAL INSURANCE:** The insurance of an insured may be continued, by payment of premium, beyond the date the insured ceases to be eligible for this insurance, but not longer than:

    (1)   twelve (12) months, if due to illness or injury; or

    (2)   one (1) month, if due to temporary lay-off or approved leave of absence.

**INDIVIDUAL REINSTATEMENT:** The insurance of a terminated person may be reinstated. He/she must be a member of a class eligible for this insurance. The insurance will go into effect on the day he/she returns to active work.

If a person returns after terminating at his/her request or for failure to pay premium when due, proof of good health must be approved by us before he/she may be reinstated.

LRS-6422-6 Ed. 9/89          4.0

## CONVERSION PRIVILEGE

An insured can use this privilege when his/her insurance is no longer in force. It has several parts. They are:

A.  If the insurance ceases due to termination of employment or membership in any of this Policy's classes, an individual Life Insurance Policy may be issued. The insured is entitled to a policy without disability or supplemental benefits. A written application for the policy must be made by the insured within 31 days after he/she terminates. The first premium must also be paid within that time. The issuance of the policy is subject to the following conditions:

   (1)  The policy will, at the option of the insured, be on any one of our forms, except for term life insurance. It will be the standard type issued by us for the age and amount applied for;

   (2)  The policy issued will be for an amount not over what the insured had before he/she terminated.  If the insurance ceases due to termination of membership in the eligible classes but the insured continues employment in another class, the amount will not be over what the insured had before he/she terminated, less the amount of any group life insurance the insured becomes eligible for within thirty-one (31) days after such termination. Any endowment payable to an insured before the termination date will not be included in such amount;

   (3)  The premium due for the policy will be at our usual rate. This rate will be based on the amount of insurance, class of risk and the insured's age at date of policy issue; and

   (4)  Proof of good health is not required.

B.  If the insurance ceases due to the termination or amendment of this Policy, an individual Life Insurance Policy can be issued. An insured must have been insured for at least 5 years under this Policy. The same rules as in A above will be used, except that the face amount will be the lesser of:

   (1)  The amount of the insured's Group Life benefit under this Policy. This amount will be less any amount he/she is entitled to under any other group life policy issued by us or another insurance company; or

   (2)  $5,000.00.

C.  If the insurance reduces, as may be provided in this Policy, an individual Life Insurance Policy can be issued. The same rules as in A above will be used, except that the face amount will not be greater than the amount which ceased due to the reduction.

D.  If an insured dies during the time in which he/she is entitled to apply for an individual policy, we will pay the benefit under the Group Policy that he/she was entitled to convert. This will be done whether or not the insured applied for the individual policy.

E.  Any policy issued with respect to A, B or C above will be put in force at the end of the 31 day period in which application must be made.

F.  If an insured is entitled to have an individual policy issued to him/her without proof of health, then he/she must be given notice of this right at least fifteen (15) days before the end of the period specified above. Such notice must be: (1) in writing; and (2) presented or mailed to the insured by you. If not, the insured will have an additional period in order to do so. This additional period will end fifteen (15) days after the insured is given notice. This period will not extend beyond sixty (60) days after the expiration date of the period provided above. This insurance will not be continued beyond the period provided above.

LRS-6422-65 Ed. 9/89                              5.0

## PREMIUMS

**PREMIUM PAYMENT:** All premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The premium due dates are stated on the Policy face page.

**PREMIUM RATE:** The premium due will be the rate per $1,000 of benefit multiplied by the entire amount of benefit volume then in force. We will furnish to you the premium rate on the Policy effective date and when it is changed. We have the right to change the premium rate:

(1)   on any premium due date after the Policy is in force for 24 months; or

(2)   when the extent of coverage is changed by amendment.

We will not change the premium rate due to (1) above more than once in any twelve (12) month period. We will tell you in writing at least 31 days before the date of a change due to (1) above.

**GRACE PERIOD:** You may pay the premium up to 31 days after the date it is due. The Policy stays in force during this time. If the premium is not paid during the grace period, the Policy will be cancelled at the end of the grace period. You will still owe us the premium up to the date the Policy is cancelled.

### BENEFICIARY AND FACILITY OF PAYMENT

BENEFICIARY: The beneficiary will be as named in writing by the Insured to receive benefits at the Insured's death. This beneficiary designation must be on file with us or the Plan Administrator and will be effective on the date the Insured signs it. Any payment made by us before receiving the designation shall fully discharge us to the extent of that payment.

If the Insured names more than one beneficiary to share the benefit, he/she must state the percentage of the benefit that is to be paid to each beneficiary. Otherwise, they will share the benefit equally.

The beneficiary's consent is not needed if the Insured wishes to change the designation. His/her consent is also not needed to make any changes in this Policy.

If the beneficiary dies at the same time as the Insured, or within 15 days after his/her death but before we receive written proof of the Insured's death, payment will be made as if the Insured survived the beneficiary, unless noted otherwise.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, any benefits due shall be paid to the first of the following classes to survive the Insured:

    (1)  the Insured's legal spouse;
    (2)  the Insured's surviving children (including legally adopted children), in equal shares;
    (3)  the Insured's surviving parents, in equal shares;
    (4)  the Insured's surviving siblings, in equal shares; or, if none of the above,
    (5)  the Insured's estate.

We will not be liable for any payment we have made in good faith.

FACILITY OF PAYMENT: If a beneficiary, in our opinion, cannot give a valid release (and no guardian has been appointed), we may pay the benefit to the person who has custody or is the main support of the beneficiary. Payment to a minor shall not exceed $1,000.00.

If the Insured has not named a beneficiary or the named beneficiary is not surviving at the Insured's death, we may pay up to $250.00 of the benefit to the person(s) who, in our opinion, have incurred expenses in connection with the Insured's last illness, death or burial.

The balance of the benefit, if any, will be held by us, until an individual or representative:

    (1)  is validly named; or
    (2)  is appointed to receive the proceeds; and
    (3)  can give valid release to us.

The benefit will be held with interest at a rate set by us.

We will not be liable for any payment we have made in good faith.

## SETTLEMENT OPTIONS

The insured may elect a different way in which payment of the Amount of Insurance can be made. He/she must provide a written request to us, for our approval, at our Administrative Office. If the option covers less than the full amount due, we must be advised of what part is to be under an option. Amounts under $2,000.00 or option payments of less than $20.00 each are not eligible.

If no instructions for a settlement option are in effect at the death of the insured, the beneficiary may make the election, with our consent.

### OPTION A—FIXED TIME PAYMENT OPTION

Equal monthly payments will be made for any period chosen, up to 30 years. The amount of each payment depends on the amount applied, the period selected and the payment rates we are using when the first payment is due. The rate of any monthly payment will not be less than shown in the table below. We reserve the right to change it. This change will apply only to requests for settlement elected after this change.

**Option A Table**
Minimum Monthly Payment Rates for each $1,000 Applied

| Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $84.47 | 7 | $13.16 | 13 | $7.71 | 19 | $5.73 | 25 | $4.71 |
| 2 | 42.86 | 8 | 11.68 | 14 | 7.26 | 20 | 5.51 | 26 | 4.59 |
| 3 | 28.99 | 9 | 10.53 | 15 | 6.87 | 21 | 5.32 | 27 | 4.47 |
| 4 | 22.06 | 10 | 9.61 | 16 | 6.53 | 22 | 5.15 | 28 | 4.37 |
| 5 | 17.91 | 11 | 8.86 | 17 | 6.23 | 23 | 4.99 | 29 | 4.27 |
| 6 | 15.14 | 12 | 8.24 | 18 | 5.96 | 24 | 4.84 | 30 | 4.18 |

### OPTION B—FIXED AMOUNT PAYMENT OPTION

Each payment will be for an agreed fixed amount. The amount of each payment may not be less than $10.00 for each $1,000.00 applied. Interest will be credited each month on the unpaid balance and added to it. This interest will be at a rate set by us, but not less than the equivalent of 3% per year. Payments continue until the amount we hold runs out. The last payment will be for the balance only.

### OPTION C—INTEREST PAYMENT OPTION

We will hold any amount applied under this section. Interest on the unpaid balance will be paid each month at a rate set by us. This rate will not be less than the equivalent of 3% per year.

If a beneficiary dies while receiving payments under one of these options and there is no contingent beneficiary, the balance will be paid in one sum to the proper representative of the beneficiary's estate, unless otherwise agreed to in the instructions for settlement.

Requests for settlement options other than the three (3) set out above may be made. A mutual agreement must be reached between the individual entitled to elect and us.

LRS-6422-10 Ed. 3/82                    8.0

## WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY

We will extend the Amount of Insurance during a period of Total Disability for one (1) year if:

    (1)  the Insured becomes totally disabled prior to age 60;
    (2)  the Total Disability begins while he/she is insured;
    (3)  the Total Disability begins while this Policy is in force;
    (4)  the Total Disability lasts for at least 6 months;
    (5)  the premium continues to be paid; and
    (6)  we receive proof of Total Disability within one (1) year from the date it began.

After proof of Total Disability is approved by us, neither you or the Insured is required to pay premiums. Also, any premiums paid from the start of the Total Disability will be returned.

We will ask the Insured to submit annual proof of continued Total Disability. The Amount of Insurance may then be extended for additional one (1) year periods. The Insured may be required to be examined by a Physician approved by us as part of the proof. We will not require the Insured to be examined more than once a year after the insurance has been extended two (2) full years.

The Amount of Insurance extended will be limited to the amount of basic group life coverage on the life of the Insured that was in force at the time that Total Disability began excluding any additional benefits. This amount will not increase. This amount will reduce or cease at any time it would reduce or cease if the Insured had not been totally disabled. If the Insured dies, we will be liable under this extension only if written proof of death is received by us.

The Amount of Insurance extended for an Insured will cease on the earliest of:

    (1)  the date he/she no longer meets the definition of Total Disability; or
    (2)  the date he/she refuses to be examined; or
    (3)  the date he/she fails to furnish the required proof of Total Disability; or
    (4)  the date he/she becomes age 70; or
    (5)  the date he/she retires.

The Insured may use the conversion privilege when this extension ceases. Please refer to the Conversion Privilege section for rules. An Insured is not entitled to conversion if he/she returns to work and is again eligible for the insurance under this Policy. If the Insured uses the conversion privilege, benefits will not be payable under the Waiver of Premium in Event of Total Disability provision unless the converted policy is surrendered to us.

If the Insured qualifies for benefits in accordance with the Waiver of Premium in Event of Total Disability provision because he/she has been diagnosed by a Physician as totally disabled due to the following Condition(s) or Procedure(s), as later defined;

    (1)  Life Threatening Cancer; or
    (2)  Heart Attack (Myocardial Infarction); or
    (3)  Kidney (Renal) Failure; or
    (4)  Receipt of Major Organ Transplant; or
    (5)  Stroke,

we will pay to the Insured an additional, one time, lump sum benefit in an amount equal to 10% of the death benefit under the basic life portion of this Policy up to a maximum of $100,000.

This lump sum benefit applies only to the first Condition or Procedure to occur among those hereinafter defined which qualifies the Insured for waiver of premium benefits. No further lump sum benefits will be payable under this provision during the same or any subsequent periods of Total Disability, or as a result of the occurrence of any other Condition or Procedure.

LRS-6422-98 Ed. 11/00          9.0

Definition(s):

"Condition(s) or Procedure(s)" mean only the following:

"Life Threatening Cancer" means a malignant neoplasm (including hematologic malignancy), as diagnosed by a Physician who is a board certified oncologist, and which is characterized by the uncontrolled growth and spread of malignant cells and the invasion of tissue, and which is not specifically excluded. The following types of cancer are not considered a Life Threatening Cancer: (1) early prostate cancer diagnosed as T2c or less according to the TNM scale; (2) colorectal cancer diagnosed as T2, N1, M0 or less according to the TNM scale; (3) breast cancer diagnosed as T3, N2, M0 or less according to the TNM scale; (4) First Carcinoma in Situ; (5) pre-malignant lesions (such as intraepithelial neoplasia); (6) brain glioma; (7) benign tumors or polyps; (8) tumors in the presence of the Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS); or (9) any skin cancer other than invasive malignant melanoma in the dermis or deeper, or skin malignancies that have become Life Threatening Cancers.

"First Carcinoma in Situ" means the first diagnosis of cancer in which the tumor cells still lie within the tissue of the site of origin without having invaded neighboring tissue. First Carcinoma in Situ must be diagnosed pursuant to a pathological diagnosis or clinical diagnosis.

"Heart Attack (Myocardial Infarction)" means the death of a segment of the heart muscle as a result of a blockage of one or more coronary arteries. In order to be covered under this provision, the diagnosis by a Physician of Heart Attack (Myocardial Infarction) must be based on:

    (1)   new electrocardiographic changes consistent with and supporting a diagnosis of Heart Attack (Myocardial Infarction); and

    (2)   a concurrent diagnostic elevation of cardiac enzymes; and

    (3)   therapeutic and functional classifications, 3 or above and C or above respectively, according to the New York Heart Association.

"Kidney (Renal) Failure" means the chronic irreversible failure of both of the kidneys (end stage renal disease), which requires treatment with dialysis on a regular basis. Kidney Failure is covered under this provision only if the diagnosis has been made by a Physician who is a board certified nephrologist.

"Physician" means a duly licensed practitioner who is recognized by the law of the jurisdiction in which treatment is received as qualified to treat the type of condition for which claim is made. The Physician may not be the Insured or a member of his/her immediate family and must be approved by us.

"Receipt of Major Organ Transplant" means that the Insured has been the recipient of a major organ transplant and that there is clinical evidence of an Insured's major organ(s) failure which, according to the diagnosis of a Physician, required the failing organ(s) or tissue of the Insured to be replaced with organ(s) or tissue from a suitable donor under generally accepted medical procedures. Organs or tissues covered by this definition are limited to liver, kidney, lung, entire heart, pancreas, or pancreas-kidney.

"Stroke" means a cerebrovascular accident or infarction (death) of brain tissue, as diagnosed by a Physician, which is caused by hemorrhage, embolism, or thrombosis producing measurable, neurological deficit persisting for at least one hundred eighty (180) days following the occurrence of the Stroke. Stroke does not include Transient Ischemic Attack (TIA) or other cerebral vascular events.

Receipt of this additional lump sum payment may be taxable. The Insured should seek assistance from his/her own personal tax advisor.

LRS-6422-38 Ed. 11/00            9.1

## CLAIMS PROVISIONS

NOTICE OF CLAIM:  Written notice must be given to us within 31 days after the Loss occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Offices or to our authorized agent. The notice should include the Insured's name, the Policy number and your name.

CLAIM FORMS: When we receive written notice of a claim, we will send claim forms to the claimant within 15 days.  If we do not, the claimant will satisfy the requirements of written proof of loss by sending us written proof as shown below. The proof must describe the occurrence, extent and nature of the loss.

PROOF OF LOSS: For any covered Loss, written proof must be sent to us within 90 days. If it is not reasonably possible to give proof within 90 days, the claim is not affected if the proof is sent as soon as reasonably possible. In any event, proof must be given within 1 year, unless the claimant is legally incapable of doing so.

PAYMENT OF CLAIMS: Payment will be made as soon as proper proof is received. All benefits will be paid to the Insured if living. Any benefits unpaid at the time of death, or due to death, will be paid to the beneficiary.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan.  The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

PHYSICAL EXAMINATION: At our own expense, we will have the right to have an Insured examined as reasonably necessary when a claim is pending. We can have an autopsy made unless prohibited by law.

LEGAL ACTION: No legal action may be brought against us to recover on this Policy within 60 days after written proof of loss has been given as required by this Policy. No action may be brought after three (3) years from the time written proof of loss is required to be submitted.

LRS-6422-72 Ed. 4/94                    10.0

## FAMILY AND MEDICAL LEAVE OF ABSENCE EXTENSION

We will allow the insured's coverage to continue for up to 12 weeks in a 12 month period, if the insured is eligible for, and you have approved, a Family and Medical Leave of Absence under the terms of the Family and Medical Leave Act of 1993 for any of the following reasons:

    (1)   To provide care after the birth of a son or daughter; or
    (2)   To provide care for a son or daughter upon legal adoption; or
    (3)   To provide care after the placement of a foster child in the insured's home; or
    (4)   To provide care to a spouse, son, daughter, or parent due to serious illness; or
    (5)   To take care of his/her own serious health condition as explained below.

If the insured, due to his/her own serious health condition, meets the definition of Total Disability in this Policy, he/she will be considered Totally Disabled and eligible for Waiver of Premium benefits according to the Waiver of Premium in Event of Total Disability provision. If the insured, due to his/her own serious health condition, is on a Family and Medical Leave of Absence, but not eligible for Waiver of Premium benefits under this Policy, insurance coverage will be continued under this extension.

The insured will not qualify for the Family and Medical Leave of Absence Extension unless we have received proof from you, in a form satisfactory to us, that the insured has been granted a leave under the terms of the Family and Medical Leave Act of 1993. Such proof: (1) must outline the terms of the insured's leave; and (2) give the date the leave began; and (3) the date it is expected to end; and (4) must be received by us within thirty-one (31) days after a claim for benefits has been filed with us.

If you grant the insured a Family and Medical Leave of Absence, the following applies to the insured who has been granted the leave:

    (1)   While the insured is on an approved Family and Medical Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force.

    (2)   Coverage will terminate for any insured if the insured does not return to work as scheduled according to the terms of his/her agreement with you; however, the insured is eligible to convert his/her coverage under the Conversion Privilege. In no case will coverage be extended under this benefit beyond 12 weeks in a 12 month period. Insurance will not be terminated for an insured who becomes Totally Disabled during the period of the leave and who is eligible for Waiver of Premium benefits, if any, according to the terms of this Policy.

    (3)   This extension is not available if the insured converts his/her coverage under the Conversion Privilege.

    (4)   While the insured is on an approved Family and Medical Leave of Absence, he/she will be considered Actively at Work in all instances unless such leave is due to his/her own illness, injury, or disability. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for an insured who is not Actively at Work until such time as he/she returns to Active Work for one full day.

All other terms and conditions of this Policy will remain in force while an insured is on an approved Family and Medical Leave of Absence.

## MILITARY SERVICES LEAVE OF ABSENCE COVERAGE

We will allow the insured's coverage to continue for up to 12 weeks in a 12 month period, if the insured enters the military service of the United States. While the insured is on a Military Services Leave of Absence, the required premium must be paid according to the terms specified in this Policy to keep the insurance in force. Changes such as revisions to coverage because of age, class or salary changes will apply during the leave except that increases in amount of insurance, whether automatic or subject to election, are not effective for such an insured until he/she has returned to work from Military Services Leave of Absence for one full day. All other terms and conditions of this Policy will remain in force during this continuation period. The insured's continued coverage will cease on the earliest of the following dates:

LRS-6422-69 Ed. 01/99               11.0

(1) the date this Policy terminates; or
(2) the date ending the last period for which any required premium was paid; or
(3) 12 weeks from the date the Insured's continued coverage began.

This Policy, however, does not cover any loss which occurs while on active duty in the military service if such loss is caused by or arises out of such military service, including but not limited to war or act of war (whether declared or undeclared).

LRS-6422-69 Ed. 01/99                           11.1

### GROUP TERM LIFE INSURANCE IMMINENT DEATH BENEFIT RIDER

(THIS RIDER ADDS AN ACCELERATED BENEFIT THAT MAY BE ELECTED BY THE INSURED IF HE IS DIAGNOSED AS HAVING LESS THAN 12 MONTHS TO LIVE. RECEIPT OF THIS ACCELERATED BENEFIT WILL REDUCE THE DEATH BENEFIT AND MAY BE TAXABLE. INSUREDS SHOULD SEEK ASSISTANCE FROM THEIR PERSONAL TAX ADVISOR.)

Attached to Group Policy Number: GL 134491
Issued to Group Policyholder: Sytex, Inc.
Rider Effective Date: January 1, 2003

This Rider is attached to and made a part of the Policy indicated above. The Policy is hereby amended, in consideration of the application for this coverage, by the addition of the following benefit. In this Rider, Reliance Standard Life Insurance Company will be referred to as "we", "us", "our".

**DEFINITIONS:** This section gives the meaning of terms used in this Rider. The Definitions of the Policy and Certificate also apply unless they conflict with Definitions given here.

"Certified" or "Certification" refers to a written statement, made by a Physician on a form provided by us, as to the Insured's Terminal Condition.

"Death Benefit" means the insurance amount payable under the Policy at the death of the insured, subject to all Policy provisions dealing with changes in the amount of insurance and reductions or termination for age or retirement. It does not include any amount that is only payable in the event of Accidental Death.

"Insured" means only a primary Insured. Dependents are not eligible for coverage under this Imminent Death Benefit Rider.

"Physician" means a duly licensed practitioner, acting within the scope of his license, who is recognized by the law of the state in which diagnosis is received. The Physician may not be the Insured or a member of his immediate family.

"Policy" means the Group Life Insurance Policy issued to the Group Policyholder under which the Insured is covered.

"Terminal Condition" refers to an Insured's illness or physical condition that is Certified by a Physician to reasonably be expected to result in death in less than 12 months.

"Written Request" means a request made, in writing, by the Insured to us.

All pronouns include either gender unless the context indicates otherwise.

**DESCRIPTION OF COVERAGE:** This benefit is payable to the Insured if, while his coverage is in force under this Rider, an Insured is Certified as being in a Terminal Condition. In order for this benefit to be paid:

(a)    the Insured must make a Written Request; and

(b)    we must receive from any assignee or irrevocable beneficiary their signed acknowledgement and agreement to payment of this benefit.

We may, at our option, confirm the terminal diagnosis with a second medical exam performed at our own expense.

**AMOUNT OF THE IMMINENT DEATH BENEFIT:** The Imminent Death Benefit will be an amount equal to 75% of the Death Benefit applicable to the Insured under the Policy on the date of the Certification of Terminal Condition, subject to a maximum benefit of $600,000.00. This benefit will be paid as a single lump sum. The Imminent Death Benefit is payable one time only for any Insured under this Rider.

**EFFECT OF BENEFIT:** If an Insured becomes eligible for, and elects to receive this benefit, it will have the following effects:

LRS-8598-001-0690 A                    12.0

(a) The Death Benefit payable for such insured will be reduced by an amount equal to the Imminent Death Benefit paid to such insured. The amount of the Imminent Death Benefit plus the corresponding Death Benefit will not exceed the amount that would have been paid as the Death Benefit in the absence of this Rider.

(b) Any amount of insurance that would otherwise be continued under a Waiver of Premium provision will be reduced proportionately, as will the maximum Face Amount available under the Conversion Privilege.

If the insured elects to receive the Imminent Death Benefit, we will send him (and any irrevocable beneficiary) a statement (Benefit Payment Notice) showing the effect that payment of this benefit will have on the death benefit.

**MISSTATEMENT OF AGE OR SEX:** The Imminent Death Benefit will be adjusted to reflect the amount of benefit that would have been purchased by the actual premium paid at the correct age and sex.

**TERMINATION OF AN INDIVIDUAL'S COVERAGE UNDER THIS RIDER:** The coverage of any insured under this Rider will terminate on the first of the following:

(a) the date his coverage under the Policy terminates; or

(b) the date of payment of the Imminent Death Benefit for his Terminal Condition.

**ADDITIONAL PROVISIONS:** This Rider takes effect on the Effective Date shown. It will terminate on the date the Group Policy terminates. It is subject to all the terms of the Group Policy not inconsistent herewith.

In witness whereof, we have caused this Rider to be signed by our Secretary.

Secretary

## PORTABILITY

An Insured may continue insurance coverage under this Policy if coverage would otherwise terminate because he/she ceases to be an Eligible Person, for reasons other than the termination of this Policy, or the Insured's retirement, provided he/she:

    (1)  notifies us in writing within 31 days from the date he/she ceases to be eligible; and
    (2)  remits the necessary premiums when due; and
    (3)  is not considered Totally Disabled under the Waiver of Premium in Event of Total Disability provision; if applicable; and
    (4)  has been covered for 12 months under this Policy.

Such coverage may be continued for a period of two (2) years beginning on the date he/she is no longer an Eligible Person.

The amount of coverage available under the Portability provision will be the current amount of coverage the Insured is insured for under the Policy on the last day he/she was Actively at Work. However, the amount of coverage will never be more than:

    (1)  the highest amount of life insurance available to Eligible Persons; or
    (2)  a total of $500,000 from all RSL group life and accidental death and dismemberment insurance combined, whichever is less.

The premium charged to continue coverage will be based on the prevailing rate charged to insureds who choose to continue coverage under the Portability provision. Such premium will be billed directly to the Insured on a quarterly, semi-annual or annual basis.

If an Insured's coverage under this Policy includes Accidental Death and Dismemberment, then such benefits may be continued under this Policy.

Insurance coverage continued under this provision for an Insured will terminate on the first of the following to occur:

    (1)  the date this Policy terminates; or
    (2)  the end of the period for which premium has been paid; or
    (3)  the date the Insured is covered under another group term life insurance policy; or
    (4)  at the end of the two (2) year period; or
    (5)  at any time coverage would normally terminate according to the terms of this Policy had the Insured continued to be an Eligible Person.

In addition, coverage will reduce at any time it would normally reduce according to the terms of this Policy had the Insured continued to be an Eligible Person.

If insurance coverage terminates due to (1) or (4) above, it may be converted to an individual life insurance policy. The conversion will be subject to the terms and conditions set forth under the Conversion Privilege.

LRS-6422-88 Ed. 02/99                     13.0